UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CORONA REALTY HOLDING, LLC,

      Plaintiff,

 -against-          MEMORANDUM & ORDER
                 08-CV-4997 (JS)(WDW)

TOWN OF NORTH HEMPSTEAD, JOHN KAIMAN,
THOMAS DWYER, ANTHONY D'URSO, WAYNE
WINK, JR., ROBERT TROIANO, JR., THE
CIVIC ASSOCIATION AT ROSLYN COUNTRY
CLUB, INC., JAMES BRANDT, BURTON
ROSLYN, ROSLYN CONSULTANTS, LLC,
SY BUCKNER, ROBERT ROTHSTEIN and
ANDREW ROTHSTEIN,

      Defendants.
----------------------------------------X

APPEARANCES:
For Plaintiff:  David Jaroslawicz, Esq.
        Jaroslawicz & Jaros, LLC
        225 Broadway, 24th Floor
        New York, NY 10007

For Defendants:
Town of North    Mark J. Hanlon, Esq.
Hempstead, Jon   Neil L. Coscio, Esq.
Kaiman, Thomas   Fiedelman & McGaw
Dwyer, Anthony   2 Jericho Plaza
D'Urso, Wayne    Jericho, NY 11753
Wink, Jr. and
Robert Troiano, Jr.

Civic Association Tracey M. Peterson, Esq.
at Roslyn Country Braverman & Associates, P.C.
Clubs, Inc., James 331 Madison Avenue
Brandt, Burton   New York, NY 10017
Roslyn, Sy Buckner,
Robert Rothstein,
and Andrew Rothstein

Roslyn Consultants: James H. Rowland, Esq.
          Zetlin & De Chiara LLP
          801 Second Avenue
          New York, NY 10017

SEYBERT, District Judge:

    Plaintiff, Corona Realty Holding, LLC, commenced this

action against the Town of North Hempstead, Jon Kaiman, Thomas Dwyer, Anthony D'Urso, Wayne Wink, Jr., Robert Troiano, Jr., The Civic Association at Roslyn Country Club, Inc., James Brandt, Burton Roslyn, Roslyn Consultants, LLC, Sy Buckner, Robert Rothstein and Andrew Rothstein (collectively, "Defendants") on December 11, 2008. The Complaint alleges claims pursuant to 42 U.S.C. §§ 1982, 1983, 1985, 1986 and 1988, and various state law claims.

Pending before this Court are Defendants' motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's motion to amend its Complaint.[1] For the reasons stated herein, Defendants' motions to dismiss are GRANTED and Plaintiff's motion to amend is DENIED.

## BACKGROUND[2]

The Roslyn Country Club ("Community") is a development surrounding and including the Club itself. The development consists of approximately 668 homes. (Compl. ¶ 24.) In a litigation that took place in the 1950s, the New York State Supreme Court, Appellate Division held that the homeowners in the Community have "implied easements giving them a first choice to join the

---

[1] The Plaintiff submitted a Reply in Opposition to the Motion to Dismiss on March 10, 2009. This document was not considered in rendering this decision because the Court does not permit sur-replies without prior approval.

[2] The following facts are regarded as true for the purpose of this motion.

[Club] and to use its facilities upon payment of a reasonable fee . . . ." Civic Ass'n at Roslyn Country Club, Inc. v. Levitt and Sons, Inc., 7 A.D.2d 992, 993 (App. Div. 1959), aff'd 7 N.Y.2d 894 (1960). In 1990, 1992, 1996, and 2000, members of the Community sought to have the Club, or portions thereof, landmarked. Each application failed or was reversed by the Appellate Division.

Some time in 2002, Plaintiff purchased the Club within the Community. (Id. ¶¶ 3, 28, 58.) Its managing member is Manouchehr Malekan ("Malekan"), who is of Iranian descent. (Id. ¶ 2.) In March 2004, the Town designated the Roslyn Country Club a landmark after soliciting opinions from Town residents, and perhaps others, as to whether the property should be landmarked. (Id. ¶¶ 40-41.) North Hempstead--the township under which Roslyn is governed--Town Supervisor John Kaiman, and North Hempstead Town Councilman Thomas Dwyer never showed Plaintiff the letters the Town residents mailed to them until after the landmark designation. (Id. ¶ 45.)

Concurrently, the Civic Association at Roslyn Country Club ("CARCC"), along with other Defendants that the Plaintiff does not specify, filed a lawsuit to limit the dues the club was charging to members of the Community, and sought to have Malekan held in contempt. (Id. ¶ 46.) Defendants also organized a boycott of the country club, distributed fliers recommending that neighbors tie ribbons to their trees, and "otherwise harass[ed] the

3

Plaintiff." (Id. ¶ 59.) Plaintiff does not mention which particular Defendants were responsible for which particular actions. (See id. ¶ 59.) Plaintiff does assert that a former president of CARCC stated, under oath, that the principle purpose in filing the landmark application was to harass the Plaintiff and use the application as a bargaining tool during negotiations with Corona. (Id. ¶ 49.) The Plaintiff also alleges that a former board member of CARCC stated that the application was filed to provide leverage during negotiations to buy Plaintiff's property. (Id. ¶ 50.) Additionally, Plaintiff alleges that Kaiman and Dwyer told Malekan that Plaintiff would never be allowed to make proper use of its property so that Plaintiff would donate the property to the Town. (Id. ¶ 58.)

Here, Plaintiff alleges that the Town's and other Defendants' purpose, through their persistent attempts to landmark the property, was to force Plaintiff to sell its property at an unfair price. (Id. ¶ 55.) Plaintiff argues that Defendants' conduct has caused (1) the value of its property to be diminished, (2) loss of income, (3) incurrence of substantial legal fees, and (4) other, non-specified damages. (Id. ¶ 57.) In response, Defendants (other than Town and Town officials) argue that even if Plaintiff did incur these damages, such damages do not satisfy the requirements for any constitutional theory upon which it can base its case. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss Compl.

4

19-21.) Moreover, Defendants note that they have only attempted to landmark the Club on one occasion since Plaintiff became the owner, so Plaintiff's claims must be limited to only the most recent application.

DISCUSSION

I. Standard of Review Under Rule 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). This standard applies to all civil cases: antitrust and discrimination suits alike. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). The complaint must "raise [the] right to relief above the speculative level," id. at 1965; thus, courts should preclude those claims that cannot be "nudged . . . across the line from conceivable to plausible . . . ." Id. at 1974. While the complaint "does not need detailed factual allegations," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations omitted).

The Second Circuit has construed Twombly to establish "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."

5

Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). However, in applying this standard, the Court must still "accept all of Plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999), cert. denied, 531 U.S. 1069, 121 S. Ct. 756, 148 L. Ed. 2d 659 (2001).

Additionally, because a motion to dismiss challenges only the sufficiency of the complaint, "the Court must limit its analysis to the four corners of the complaint." Hunt v. Pritchard Indus., Inc., No. 07-CV-0747, 2007 U.S. Dist. LEXIS 47749, at *10 (S.D.N.Y. July 3, 2007) (internal quotation marks and citation omitted). Generally, "[c]onsideration of extraneous material in judging the sufficiency of the complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)." Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2007). Nevertheless, the terms and effects of documents on which a plaintiff relies in drafting the complaint can also be considered when deciding a motion to dismiss. See id. at 153.

II. Plaintiff's Claims

A. 42 U.S.C. §§ 1982, 1985, 1986 and 1988 Claims

In its Complaint, Plaintiff alleges that "this is a claim involving a violation of 42 U.S.C. [§§] 1982, 1983, 1985, 1986, and 1988." (Compl. ¶ 22.) From that point forward, however, Plaintiff

6

never again mentions Sections 1982, 1985, 1986, or 1988. Moreover, Plaintiff altogether fails to allege facts that could sustain claims under these sections. Accordingly, Plaintiff's "claims" under Sections 1982, 1985, 1986, and 1988 are DISMISSED with prejudice.

To state a Section 1982 claim of deprivation of civil rights, a plaintiff must allege that the defendants' actions were motivated by race. See 42 U.S.C. § 1982 (2000); Donelli v. County of Sullivan, No. 07-CV-2157, 2009 WL 2365551, at *10 (S.D.N.Y. July 31, 2009). Similarly to state a claim under Section 1985, a plaintiff must allege some racial or other class-based, invidious discriminatory animus behind the conspirators' action. See Palmieri v. Lynch, 392 F.3d 73, 86 (2d Cir. 2004) (citing Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999)). Although the Plaintiff says that its managing member, Malekan is of Iranian descent (Compl. ¶ 2), it does not allege that his national origin prompted the Defendants' actions. Because a Section 1986 claim is predicated on a successful 1985 claim, Brown v. City of Oneonta, N.Y., 221 F.3d 329, 341 (2d Cir. 2000) (quoting Mian v. Donaldson, Lufkin and Jenrette Secs., Inc., 7 F.3d 1085, 1087 (2d Cir. 1983)), the Plaintiff's Section 1986 claim also fails. Thus, Plaintiff's Section 1982, 1985, and 1986 claims are DISMISSED.

Plaintiff also alleges a claim based upon 42 U.S.C. § 1988. The only relevant portion of the statute to the Plaintiff's

Complaint is the attorneys' fees provision. See 42 U.S.C. § 1988(b) (2000). Because the Court does not sustain any of Plaintiff's claims, the Court DISMISSES any claim for attorneys' fees the Plaintiff brings based upon Section 1988.

B. Section 1983 Claim: Equal Protection

Plaintiff brings an action under Section 1983, alleging that Defendants violated the equal protection clause (Compl. ¶¶ 53-54, 60) by conspiring to deprive Plaintiff of its property. Plaintiff does not allege that Defendants have subjected anyone else to their actions, but states it is entitled to relief under Supreme Court precedent that has recognized "a class of one where that individual or entity is being irrationally singled out . . . ." (Compl. ¶ 54.)

1. Class of One

To establish a claim under Section 1983, Plaintiff must show: (1) that it was treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. See Harlen Assoc's v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). Clearly, Plaintiff makes no allegations with regard to differential treatment based on its membership in a protected class; thus, Plaintiff's Section 1983 claims can only survive if it

sufficiently establishes that (1) it was treated differently from other similarly situated individuals and (2) it was punished for exercising its constitutional rights or Defendants acted maliciously or with the bad faith intent to injure them.

In Village of Willowbrook v. Olech, the Supreme Court upheld a class-of-one equal protection challenge to state legislative and regulatory action. 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060. But recently in Engquist v. Oregon Dept. of Agr., the Court clarified Olech:

> What seems to have been significant in Olech . . . was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed. This differential treatment raised a concern of arbitrary classification, and therefore required that the State provide a rational basis for it. There are some forms of state action, however, which by their nature involve discretionary decision[-]making based on a vast array of subjective, individualized assessments. In such cases treating like individuals differently is an accepted consequence of the discretion granted to governmental officials.

__ U.S. __, 128 S. Ct. 2146, 2147, 170 L. Ed. 2d 975 (2008). The Court continued:

> Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity

9

> that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself-the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

Id. at 2154.

### 2. Plaintiff has Failed to State a Claim Based on Class-of-One Precedent

Plaintiff is correct in that the Supreme Court "ha[s] recognized successful equal protection claims brought by a 'class of one,' <u>where the plaintiff alleges that she has been intentionally treated differently from others similarly situated</u> and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d. 1060 (2000) (emphasis added). Unfortunately, Plaintiff's assertion that "[Defendants] may not treat some citizens differently than others" (Compl. ¶ 53) does nothing to satisfy the requirements of a "class of one" claim. Plaintiff has not alleged that Defendants have treated it

10

differently than other, similarly situated, citizens or entities. Moreover, Plaintiff altogether fails to satisfy the remaining elements of its equal protection claim. Therefore, Plaintiff's equal protection claim under Section 1983 is DISMISSED.

    C.    Section 1983 Claims: Procedural and Substantive Due Process

Plaintiff alleges that Defendants violated its procedural and substantive due process rights. (Compl. ¶ 60.) To state a procedural due process claim, a plaintiff must allege that the government deprived him of a constitutionally-protected property interest without providing a constitutionally adequate pre or post-deprivation process. N.Y. State Nat. Org. of Women v. Pataki, 261 F.3d, 156, 163 (2d Cir. 2001). A substantive due process claim requires a plaintiff to show that the government deprived it of a constitutional right and that this deprivation "shock[s] the conscience." See Collins v. City of Harker Heights, Tx., 503 U.S. 115, 128, 112 S. Ct. 1061, 1070, 117 L. Ed. 2d 261 (1992). Plaintiff cannot show that the government deprived it of a constitutionally-protected interest.

Although Plaintiff states that "[d]efendants' conduct has caused the value of the [P]laintiff's property to be diminished [and] loss of income" (Compl. ¶ 60.), a decline in property values has not been recognized as implicating the fourteenth amendment's due process clause. See BAM Historic Dist. Ass'n v. Koch, 723 F.2d 233, 237 (2d Cir. 1983) (holding that the government did not

11

violate the due process clause even though a shelter it had built in the vicinity of the plaintiff's property caused a decline in property values). However even if such an action could implicate the due process clause, Plaintiff nowhere provides any plausible reason to believe that this previous landmark designation actually had the effect of lowering the value of its property. Under the "'flexible 'plausibility standard,'" a plaintiff must amplify a claim "with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). In this case, Plaintiff has merely provided the conclusory assertion that its property value has been hurt by Defendants' actions. Plaintiff has not stated any fact to support its assertion that the 2004 landmark designation diminished its property value.

Nor has Plaintiff provided a basis for believing that the other alleged actions of Defendants constituted a deprivation of a constitutional right. The sending of the letter to solicit opinions from Town residents about whether the property should be landmarked (Compl. ¶40), the "disclosure" of the "straw poll" (id. ¶ 42), and the Town's refusal to provide Plaintiff with the letters the Town received from Town residents until after the landmark designation occurred (id. ¶ 45) in no way affect Plaintiff's property interests or any other constitutional right. The

12

allegation that Defendants boycotted the country club (id. ¶ 59) fails to support Plaintiff's claim because the first amendment protects the ability of private citizens to boycott. NAACP v. Claiborne Hardware Co., 458 U.S. 886, 907-15, 102 S. Ct. 3409, 3422-27, 75 L. Ed. 2d 1215 (1982). But even if government-induced boycotts could implicate the due process clause, Plaintiff has pleaded no facts that would render plausible the claim that the government induced this boycott.

The attempts by some of the Defendants to limit the dues they should pay and hold the manager in contempt (id. ¶ 46) sound slightly more plausible as bases upon which to state a due process claim, but these also fail to implicate the due process clause because Plaintiff has not alleged that these efforts were successful (see id.): it therefore has not alleged that its property rights have been violated. Despite the possible ill motives of some Defendants in attempting to landmark Plaintiff's property, as revealed by the alleged testimony of non-Defendants Luttinger and Walzer (Compl. ¶¶ 49-50) and the alleged statements of Kaiman and Dwyer (Compl. ¶ 58), Plaintiff has not sufficiently pled that it suffered a constitutional deprivation.

Government actions that only diminish property value do not violate the due process clause, and even if they did, Plaintiff has provided no reason to believe that Defendants' conduct actually diminished its property value. Although Defendants may have

attempted to deprive Plaintiff of its property rights by litigating to limit their dues and to hold Plaintiff's managing member in contempt, mere attempts do not support a due process claim. For these reasons, the claim does not succeed. Plaintiff's procedural and substantive due process claims are DISMISSED.

D. Section 1983 Takings Claim

Plaintiff argues that Defendants' actions constituted a "taking" of its property. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 6.) The Supreme Court has stated that a "taking" without just compensation always violates the due process clause. Penn Cent. Transp. Co. v. City of N.Y., 438 U.S. 104, 142 n.3, 98 S. Ct. 2646, 2668 n.3, 57 L. Ed. 631 (1978) (quoting Chicago, B. & Q. R. v. Chicago, 166 U.S. 226, 236, 17 S. Ct. 581, 584, 41 L. Ed. 979 (1897)). Thus, if the due process clause has not been violated, it follows that the government has provided just compensation, or has not committed a taking. Since Plaintiff has not stated a due process claim, it has not stated a takings claim either. Its takings claim is therefore DISMISSED.

E. State Claims

Because the Court has dismissed the entirety of Plaintiff's federal claims, it will not exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367 (2000). In its opposition papers, Plaintiff consented to the Court refusing to exercise pendent jurisdiction if all federal claims

14

were dismissed. (See Pl.'s Mem. in Opp'n 12.) Accordingly, Plaintiff's state law claims are therefore DISMISSED.

F. Leave to Amend the Complaint

1. Standard Under Rule 15(a)

Rule 15(a) of the Federal Rules of Civil Procedure governs leave to amend the pleadings. This Rule provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a); see also Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). In Section 1983 violations especially, the court should not "dismiss a claim without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum, 927 F.2d at 705. The decision on whether to grant leave to amend is a decision that is within the discretion of the district court. Forman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). When deciding whether to grant leave to amend, the district court should consider any "undue delay, bad faith or dilatory motive" on the part of the moving party and "undue prejudice to the opposing party." Id.

It is well settled that "where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). Therefore, if the proposed amendment would be futile, leave to amend may be denied. Ricciuti

15

v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). An amendment is considered to be futile if the proposed claim would not be able to withstand a motion to dismiss pursuant to Rule 12(b)(6). Dougherty v. North Hempstead Bd. of Zoning, 282 F.3d 83, 88 (2d Cir. 2002).

2. Leave to Amend is not Appropriate in this case

Unfortunately, Plaintiff does not propose specific amendments, nor do it formally seek leave to amend by way of motion and a memorandum of law. Rather, Plaintiff addresses none of the factors that the Court must consider in rendering a decision on a motion to amend and instead blanketly state:

> If for any reason this Court, in reviewing the complaint, believes that additional facts are necessary, or a more specific pleading should be filed - although in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160 (1933) there is no heightened pleading standard for claims brought under 42 U.S.C. 1983 - then the action should not be dismissed but plaintiff should be given an opportunity to amend the pleading pursuant to FRCP 15(a), to allege additional facts which might be lacking as a matter of pleading and not as a matter of factual substance or the merits.

(Pl.'s Mem. in Opp'n 12-13.) Defendants argue that Plaintiff's application should be denied, because Plaintiff has failed to comply with Rule 7 of the Federal Rules of Civil Procedure. The Court agrees with Defendants, and also holds that Plaintiff's amendment should be denied for its failure to meet the requirements of Rule 15.

16

Plaintiff's motion to amend comes at a relatively early stage of the case, and based on the facts presented to the Court, it appears that Plaintiff did not unduly delay in filing this request to amend. Similarly, the Court finds that Plaintiff does not assert its request in bad faith or to delay the proceedings. Defendants have not asserted that they would suffer unfair prejudice if Plaintiff was permitted to amend. Nevertheless, the Court need not analyze the remaining Rule 15(a) factors, because amendment in this case would be futile. Under no circumstances can Plaintiff allege facts that would permit its currently dismissed claims to withstand a motion to dismiss, let alone a motion for summary judgment.

Accordingly, the Court DENIES Plaintiff's motion for leave to amend. Additionally, the Court declines to exercise pendent jurisdiction over Plaintiff's remaining state law claims.

III. Statute of Limitations Bars Plaintiff's Claims

There is a three-year statute of limitations for actions brought under Section 1983. See Pinaud v. County of Suffolk, 52 F.3d 1139, 1156 (2d Cir. 1995) (citing Owens v. Okure, 488 U.S. 235, 250-51, 109 S. Ct. 573, 582, 102 L. Ed. 2d 594 (1989)). Plaintiff asserts that Defendants' last actions giving rise to their 1983 claims occurred circa 2004, at the latest. Plaintiff has pled no facts or circumstances that warrant tolling of the statute of limitations, nor has it pled facts leading the Court to

believe that there are ongoing violations. Thus, even if Plaintiff had meritorious claims, which it does not, they would be barred by the statute of limitations.

## CONCLUSION

For the reasons stated herein, the Court hereby GRANTS Defendants' motions to dismiss. Plaintiff's claims are DISMISSED with prejudice. Additionally, the Court DENIES Plaintiff's motion to amend its Complaint. The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/S/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August 24, 2009
Central Islip, New York